# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATRINA HITSMAN, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-16-406-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

The claimant Katrina Hitsman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 15, 1964, and was forty-eight years old at the time of the administrative hearing (Tr. 55). She has a tenth grade education, and has worked as a restaurant manager (Tr. 55, 75). The claimant alleges that she has been unable to work since March 30, 2011, due to depression (Tr. 176, 197).

### Procedural History

On April 27, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 176-82). Her application was denied. ALJ David Engel conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 14, 2012 (Tr. 29-43). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium, light, and sedentary work, except that she was unable to climb ropes, ladders, and scaffolds, or work in environments where she would be exposed to unprotected heights and dangerous moving

machinery parts (Tr. 34). The ALJ found that the claimant could understand, remember, and carry out simple to moderately detailed instructions in a work-related setting, and could interact with co-workers and supervisors under routine supervision (Tr. 34). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, final inspector, collator, semiconductor bonder, and printed circuit board taper (Tr. 41-43).

## Review

The claimant contends that the ALJ erred by failing to properly analyze her credibility. The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of depression and allied disorders (Tr. 32). The relevant medical records reveal that Sue Rollins, a nurse practitioner at Hope Community Services, Inc., regularly treated the claimant for major depressive disorder from February 2008 through March 2012 (Tr. 243-76, 327-29, 351-59). Ms. Rollins's treatment notes reflect that the claimant's depression waxed and waned, but that she consistently reported job-related depression between November 2010 and March 2011 (Tr. 243, 249, 252, 255, 258, 275). From August 2011 through March 2012, the claimant also attended counseling sessions with providers at Hope Community Services, Inc. (Tr. 360-70). Treatment notes from these sessions reflect that the claimant made progress on treatment objectives (Tr. 360-70).

On June 30, 2011, Sherri L. Murry, Ph.D., conducted a psychological consultative examination of the claimant (Tr. 304-07). Dr. Murry noted the claimant was noticeably depressed as evidenced by her depressed affect and crying, but that she also laughed at times during the evaluation (Tr. 306). She indicated that the claimant demonstrated good judgment through her medication compliance (Tr. 306). Additionally, Dr. Murry found that the claimant had no evidence of impairment with regard to visuospatial/executive functioning, good attention, and no evidence of cognitive impairment (Tr. 306). In her summary and prognosis, Dr. Murry stated that the claimant's depression was related to her work as a store manager for a fast food company, and that her symptoms seemed to exacerbate as her workload increased and with upper management's inflexibility (Tr. 306). Dr. Murry opined that the claimant's symptoms may resolve with appropriate treatment for insomnia and a change in workplace or type of work (Tr. 306). She stated it was important to re-evaluate the claimant's depression after she was not working for the same company for a period of one year, and after her insomnia was being addressed (Tr. 306). Dr. Murry diagnosed the claimant with major depressive disorder, recurrent, moderate, by history, and assigned a Global Assessment of Functioning ("GAF") score of fifty-five (Tr. 306).

The claimant established care with Dr. Eric Broadway on May 9, 2012, and was diagnosed with depression with anxiety (Tr. 346-48). At a follow-up appointment with Dr. Broadway on July 3, 2012, the claimant reported that her medications were helping, but did not resolve her crying spells and "emotional sprees" (Tr. 349).

On July 22, 2011, state reviewing psychologist Cynthia Kampschaefer, Psy.D., found that the claimant's mental impairment consisted of major depressive disorder,

recurrent, moderate, and that she was moderately impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 312, 319). She then stated that the claimant was cognitively capable of performing simple and some complex work-related tasks with no public contact (Tr. 321). Dr. Kampschaefer also completed a Mental RFC Assessment and found the claimant was moderately limited in her ability to understand, remember, and carry out detailed instructions, and to interact appropriately with the general public (Tr. 323-25). In her written comments, Dr. Kampschaefer wrote that claimant could perform simple and some complex tasks, could not relate to others on a superficial work basis, and could adapt to a work situation (Tr. 325). These findings were affirmed on review (Tr. 344).

On November 22, 2011, Chris Johnston, a counselor, completed a Medical Source Statement wherein he opined that the claimant was unable to engage in stress situations or interpersonal relations (Tr. 345). Specifically, he stated that the claimant was moderately limited in her ability to interact appropriately with the public, supervisors, and co-workers; markedly limited in her ability to understand, remember, and carry out short, simple instructions, and to respond appropriately to change in a routine work setting; and extremely limited in her ability to understand, remember, and carry out detailed instructions, to make judgments on simple work-related decisions, and to respond appropriately to work pressures in a usual work setting (Tr. 345).

At the administrative hearing, the claimant testified that she experiences "crying spells" three or four times per day (Tr. 61). As to her anxiety and panic attacks, the claimant further testified that she has difficulty handling even small-sized crowds, and as

a result, goes to the grocery store early in the morning or late at night (Tr. 63). She stated she experiences panic attacks three or four times per day (including at home), and that during a panic attack, her heart races, she sweats, and she has difficulty staying focused and concentrating (Tr. 64, 66). She further stated that she has difficulty with authority because she cannot follow simple instructions (Tr. 65-66). During a typical week, the claimant testified that she leaves her house once or twice, and never goes outside by herself (Tr. 67). Additionally, the claimant stated that she watches television, but does not understand what she is watching (Tr. 71-72).

In his written opinion, the ALJ summarized the claimant's testimony and the medical record. In discussing her subjective complaints, the ALJ concluded that the claimant was not entirely credible in light of discrepancies between her alleged symptoms and the objective documentation in the file (Tr. 39). In support, he found: (i) her "fairly limited" daily activities could not be objectively verified, (ii) it was difficult to attribute her limited activities to her medical condition in light of the relatively weak medical evidence and "other forms," (iii) her daily activities were not as limited as one would expect given her complaints, (iv) her mental health treatment was routine and conservative, (v) treatment notes did not corroborate her alleged medication side effects, and (vi) there were numerous inconsistencies between her physical limitations and the objective medical evidence (Tr. 39-40).

At the time of ALJ Engel's 2012 opinion, the prevailing standard was that deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. Further,

an ALJ could disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (*superseded by* Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (effective Mar. 28, 2016)). The standard for evaluating credibility, as noted above, has since been superseded by Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016). Regardless of which standard is applied, the ALJ's credibility determination fell below these standards.

First, the ALJ cited to but did not discuss the factors set forth in Social Security Ruling 96-7p and 20 C.F.R. §§ 404.1529, 416.929, and further failed to apply those factors to the evidence.[3] He was not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but "simply 'recit[ing] the factors'" is insufficient, *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (*superseded by* Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (effective Mar. 28, 2016), and in this case the ALJ did not even do that. The ALJ

---

[3] Under both SSR 96-7p and SSR 16-3p, the factors to consider in evaluating a claimant's subjective symptoms are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 *and* Soc. Sec. Rul. 16-3p, 2016 WL 1119029, at *7.

thoroughly summarized the evidence, including the claimant's testimony, but he did not affirmatively link any of it to specific factors. *See Kepler,* 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.").

Second, the ALJ relied in large part on a recitation of the claimant's daily activities as support for his credibility determination. He found the claimant "has no problems with her personal care, she eats and does as little as possible, vacuums, does dishes, laundry, sweep and mop[sic]. She shops in stores for food, watches television, and plays games on the computer." (Tr. 40). However, these findings, at least in part, incorrectly represent the record because the claimant further qualified most of these activities. She indicated that she requires reminders to tend to her personal care; can perform household chores, but doesn't finish them, or simply doesn't do them; shops for food only early in the morning or late at night; and does not understand what she watches on television (Tr. 58-59, 63, 71-72). Furthermore, an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The 'sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity.'" *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir.1993), *quoting Frey,* 816 F.2d at 516–17.

Third, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The ALJ should have *first* evaluated the claimant's credibility

according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around; instead, the ALJ apparently judged the claimant's credibility according to an already-determined RFC. *See Bjornson v. Astrue*, 671 F.3d 640, 644 (7th Cir. 2012) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be.").

Finally, some of the reasons the ALJ gave for finding the claimant's subjective complaints were not credible are not entirely supported by the record. For example, the ALJ stated that there were numerous inconsistencies between the claimant's physical limitations and the objective evidence, but the record contains no medical evidence as to any physical impairments. Additionally, the ALJ stated that the claimant alleged various medication side effects, and faulted her because she was instructed to briefly stop taking her medication in an effort to ascertain whether it was causing headaches and nausea. However, the claimant reported she did not know why she was having headaches, never attributed her headaches to any medication, reported headaches only on two occasions, and did not allege headaches or medication side effects as a disabling impairment (Tr. 357, 367). Further examination of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not

support them.  *See Clifton,* 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis under the appropriate standard.  On remand, the ALJ should properly analyze the claimant's credibility pursuant to Soc. Sec. Rul. 16-3p, and if such analysis requires any adjustment to the claimant's RFC on remand, the ALJ should re-determine what work she can perform, if any, and whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 13th day of March, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**